GARY VICTOR DUBIN 3181
FREDERICK J. ARENSMEYER 8471
PETER T. STONE 2788

Dubin Law Offices
Suite 3100, Harbor Court
55 Merchant Street
Honolulu, Hawaii 96813

Telephone: (808) 537-2300
Facsimile: (808) 523-7733
Email: gdubin@dubinlaw.net
Email: farensmeyer@dubinlaw.net
Email: pstone@dubinlaw.net

Attorneys for Plaintiff
Jennifer Cory Trost

FILED IN THE
UNITED STATES DISTRICT COURT
DISTRICT OF HAWAII

JUL 2 5 2011

at  11  o'clock and  05  min.  A  M
SUE BEITIA, CLERK

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | |
|---|---|
| JENNIFER CORY TROST, a resident of the State of California,<br><br>        Plaintiff,<br><br>vs.<br><br>LEILANI P. EMBERNATE, a resident of the State of Hawaii, formerly doing business as TYPICAL TROPICAL PROPERTIES, LLC and PACIFIC STAR MORTGAGE, INC.; and TYPICAL TROPICAL PROPERTIES, LLC, a Hawaii limited liability company now known as RAINBOW REAL ESTATE GROUP, LLC; and PACIFIC STAR MORTGAGE, INC., a dissolved Hawaii corporation,<br><br>        Defendants. | CIVIL CV11 00458 KSC<br><br>COMPLAINT FOR DAMAGES FOR FRAUD, MISREPRESENTATION, CONCEALMENT AND DECEIT, FOR BREACH OF FIDUCIARY DUTY, FOR BREACH OF CONTRACT AND FOR THE INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, AND FOR AN ACCOUNTING, FOR THE SETTING ASIDE OF FRAUDULENT CONVEYANCES, FOR THE IMPOSITION OF CONSTRUCTIVE TRUSTS AND FOR THE DISGORGEMENT OF UNJUST ENRICHMENT; DEMAND FOR TRIAL BY JURY; SUMMONS IN A CIVIL ACTION |

**COMPLAINT FOR DAMAGES FOR FRAUD, MISREPRESENTATION, CONCEALMENT AND DECEIT, FOR BREACH OF FIDUCIARY DUTY, FOR BREACH OF CONTRACT AND FOR THE INTENTIONAL AND/OR NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS, AND FOR AN ACCOUNTING, FOR THE SETTING ASIDE OF FRAUDULENT CONVEYANCES, FOR THE IMPOSITION OF CONSTRUCTIVE TRUSTS AND FOR THE DISGORGEMENT OF UNJUST ENRICHMENT**

COMES NOW Plaintiff JENNIFER CORY TROST ("Trost"), a resident of the State of California, by and through her undersigned attorneys, and for her Complaint against Defendants LEILANI P. EMBERNATE ("Embernate"), a resident of the State of Hawaii (formerly doing business as TYPICAL TROPICAL PROPERTIES, LLC and PACIFIC STAR MORTGAGE, INC.), and TYPICAL TROPICAL PROPERTIES, LLC, now known as RAINBOW REAL ESTATE GROUP, LLC ("Typical Tropical") (a Hawaii limited liability company), and PACIFIC STAR MORTGAGE, INC. ("Pacific Star") (a dissolved Hawaii corporation) (collectively, "Brokers"), alleges and avers as follows:

## JURISDICTION AND VENUE

1. This Complaint is being filed in part pursuant to the written contractual agreements specified herein below and pursuant to common law doctrines proscribing fraudulent conduct.

2. The transactions described and complained of herein and the harm described and complained of herein occurred in this District where the Defendants have conducted business, and has been brought in this District Court between citizens of different States pursuant to Section 1332(a)(1) of Title 28 of the United States Code, the matter in controversy exceeding the sum of $75,000, exclusive of interest and costs.

## THE PARTIES

3. Trost is presently a resident of the State of California, and resided in the County of Hawaii in the State of Hawaii at the time of the transactions complained of below.

4. Embernate, at all times relevant hereto, a resident of the County of Hawaii in the State of Hawaii, as Trost's real estate agent and mortgage originator and investment counselor, was and is a licensed mortgage solicitor in the State of Hawaii, license number MS-2732, since May 12, 1992, conducting a mortgage business through Pacific Star and presently conducting a mortgage business through Meridian Funding, Inc., and simultaneously was and is a licensed real estate sales person in the State of Hawaii, license number RS-51379, conducting a real estate business through Typical Tropical and presently conducting a real estate business through Maile Lei Realtors, LLC since April 27, 2009.

5. Typically Tropical, whose principal location is in the County of Hawaii in the State of Hawaii, a Hawaii limited liability company, since March 3, 2004 known as Rainbow Real Estate Group, LLC, doing business as Typically Tropical, which participated in the transactions complained of herein as Trost's real estate agent.

6. Pacific Star, whose principal location was in the County of Hawaii in the State of Hawaii, was a Hawaii corporation reportedly dissolved, which participated in the transactions complained of herein as Trost's mortgage originator.

7. Embernate's management and/or ownership and/or control of Typical Tropical and Pacific Star were so intertwined, interconnected, and unified, through interconnecting controlling persons, that each is the *alter ego*, one of the other, such that the acts of one are as a matter of fact and law the acts of the others, giving to each said Broker apparent authority to act for the others, such that it would be a fraud upon Trost to find any of them separate, one from the other, in the assessment of liability for the wrongdoing alleged herein.

8. Embernate further believes, and based upon such belief, further alleges and avers that there are other individuals, groups, and/or entities, family members of Embernate including her husband and children, agents, servants, employers, employees, partners, associates, lenders, loan officers, appraisers, notaries, co-venturers, joint venturers, shareholders, attorneys, accountants, and/or assistants of said already named Defendants who are also partially responsible for the injuries, damages, and harm hereinbelow complained of, whose true identities and capacities are not yet known to Trost and to her attorneys, or whose involvement in same has not yet been identified by her and her attorneys; and leave of Court will

be requested to add same as additional named Defendants herein at such time as their true identities and capacities and participation in same may become known.

## THE FACTS

9. Between 2002 and 2006, Brokers not only served as Trost's real estate agent and mortgage broker for various acquisitions in the County of Hawaii in the State of Hawaii, but borrowed money from Trost, loaned money to Trost, and provided Trost with various financial and investment advice, commingling her money with theirs without Trost's knowledge or permission.

10. Brokers did so in a self-dealing scheme to churn and to steal Trost's money in order to yield enormous commissions and hidden ownership interests and unjust enrichment for themselves and to thereby defraud Trost, which activities were concealed from Trost until late November 2006 when Embernate flatly refused to provide an accounting to Trost and to pay her her money back.

### The Kapuna Street Property

11. The Brokers' scheme to defraud Trost began in October 2002 when the Brokers obtained a construction loan for Trost for her Kapuna Street residence (TMK No. (3) 7-6-22-91) and then advised Trost to refinance her Kapuna Street residence so that she could utilize the equity she had in it and so that they could place her in further real estate investments, advising her that in that way she could capitalize her equity.

## The Donkey Mill Property

12. Brokers then persuaded Trost in February 2003 to purchase a property located at Mamalahoa Street (TMK No. (3) 7-8-15-7), referred to as the Donkey Hill Property; Trost entered into a purchase agreement, and after an extended escrow at Title Guaranty in Kailua-Kona, the escrow was eventually cancelled on January 19, 2004.

13. In the interim, the Brokers took a ½ undivided interest in the Donkey Hill Property, recording a warranty deed to the property on July 21, 2003, recorded in August 2003.

14. Brokers then drafted a partnership agreement signed on July 22, 2003 with respect to the Donkey Hill Property, by which Trost paid $55,000 to the sellers of the February 2003 purchase agreement, with the Brokers misrepresenting their interest in the Donkey Hill Property, later without any accounting paying Trost $48,208.45 for her investment after the property was sold in May 2005.

## The Trost IRA

15. In April 2003 Brokers advised Trost to close out her Mother's IRA retirement account in the amount of $260,887 so that Brokers could invest the monies for Trost, and as a result of that advice, the IRA account was retired, causing state and federal tax liabilities amounting to $105.000.

16. Additionally, some of the IRA account funds were loaned to Embernate personally.

### The Kaloko Drive Property

17. Next, in November 2003 and in March 2004 Brokers assisted Trost in the refinancing of her Kaloko Drive Property (TMK No. (3) 7-3-025-15), which generated still more commissions for Brokers.

### The Iolani Property

18. On April 6, 2004, Trost invested $85,000 with Brokers on the Iolani Property (TMK No. (3) 7-6-012:137), Brokers acquiring title to the Iolani Property on April 12, 2004, later selling the Iolani Property on May 20, 2005 for $1,100,000.

19. Brokers however never provided an accounting for the sale of the Iolani Property to Trost, eventually advising her in November 2006 that she had made $45,868.89 on her investment from the sale.

### The Kohanaiki Property

20. In November 2004, at the request of Brokers, Trost gave $80,000 to ME Construction, an entity controlled by Brokers, as an investment in the Kohanaiki Property (TMK No. (3) 7-3-58-24), yet Brokers failed to record her ownership interest in the Kohanaiki Property.

21. Brokers also reinvested into the Kohanaiki Property Trost's proceeds from the sale of the Donkey Mill Property and from the sale of the Iolani Property, again not recording any ownership interest in it of hers.

### The Halona Place Property

22. In September 2004, Brokers represented Trost in the sale of the Kapuna Street Property, selling the property to one of their clients without disclosing the dual agency to Trost, and representing to Trost that the proceeds of the sale were to be used in a 1031 exchange for investment in the Kohanaiki Property, but which Brokers instead in an amount believed to be $295,417.52 applied to the purchase of another property, the Halona Property (TMK No. (3) 6-8-28-25).

23. Subsequently, in July 2005 Brokers represented Trost in the sale of the Halona Property to the accountant (Belinda) of the Brokers, failing to make full disclosure to Trost concerning the sale, reducing the sales price to less than the purchase price, thus denying Trost any profit whatsoever from the sale, while Brokers received a 6% sale commission, misrepresenting to Trost that her profits were being invested in the Kohanaiki Property.

### The Oneone Property

24. In October 2004, Brokers sold Trost's property located in the Kokua Loa Subdivision, referred to as the Oneone Property (TMK No. (3) 7-3-31-73) to one of their clients, receiving a sales commission, never disclosing the dual agency to

Trost, nor providing Trost with any justification for the selling price believed to have been substantially below market value.

### The Discovery Harbor Properties

25. In September 2005, Brokers represented Trost in the purchase and financing of two lots in Discovery Harbor (TMK Nos. (3) 9-4-022-044 and (3) 9-4-016-036).

26. In the sale of the first lot, Brokers failed to disclose to Trost that Embernate had purchased the lot for $130,000, while reselling it to Trost that same day for $180,000, way in excess of fair market price.

27. Brokers also represented Trost in the purchase and refinancing of the second Discovery Harbor lot, without similarly providing Trost will full and accurate disclosures regarding that transaction either.

### The Ahikawa Street Property

28. In May 2006, upon the misleading advice of Brokers, Trost bought the Ahikawa Street Property (TMK No. (3) 7-3-23-32), the Brokers earning excessive commissions while intentionally failing to disclose known defects in the house.

### The Gaspar Loan

29. In October 2006, Brokers advised Trost to loan money to some of their clients, William and Joyal Gaspar, misrepresenting to Trost the terms and conditions of the loan.

## The Consequences of Brokers' Fraudulent Scheme

30. The above transactions were part and parcel of a continuing plan and conspiracy by Brokers to defraud Trost, and are only some of the known fraudulent transactions that took place between 2002 and 2006 involving the misuse and eventual theft of Trost's properties and investment funds.

31. During all of this time, Brokers maintained a relationship of trust and confidence with Trost, Trost having no personal knowledge of real estate investing, and as a result of their superior knowledge and relationship of trust and confidence, Trost reasonably relied upon them to wisely invest her monies for her benefit.

32. Upon information and belief and investigation, the same fraudulent scheme was waged by these same Brokers upon many others in the County of Hawaii, resulting in enormous profits for Brokers now believed in whole or in part fraudulently transferred to family members, business associates, and to friends.

33. As a result of said fraudulent scheme, Trost is now penniless, having lost all of her properties to foreclosure and all of her life savings, and has been forced to survive to leave the State of Hawaii with her life and her finances in ruins, and continuing to suffer severe emotional distress as a result of the embarrassing crippling mental and physical ordeal that Brokers put her through aforesaid.

34. Each and every allegation above is hereby realleged and incorporated in each and every paragraph below, and intended to include all money and all

properties of Trost wrongfully taken whether specifically presently known or unknown or identified above or not, the exact amount of money and number of properties to be determined in accordance with her discovery in this Case and subject to proof at trial.

## LIABILITY AND DAMAGES

### COUNT ONE
### Damages for Fraud, Misrepresentation, Concealment and Deceit

35. Trost was induced by the fraudulent misrepresentations and concealments of Brokers, upon which she reasonably relied, as set forth hereinabove, to enter into said listing and commission and sales and investment and loan agreements with Brokers and others, when in fact, then and there, at the time of contracting and/or providing Trost with said advice, Brokers never intended to carry out their promises therein to Trost but to self-deal with her money and her properties, as a result of which she suffered and continues to suffer actual damages in an amount to be determined, subject to proof at trial.

36. The acts of fraud, misrepresentation, concealment and deceit, as explained above, were done with a wanton, callous, intentional and/or reckless criminal disregard for the rights and feelings and financial and mental health of Trost, as a result of a fraudulent scheme to steal her money and her property, entitling Trost to an award of exemplary and punitive damages in an amount of at least ten times her actual damages.

37. The acts of fraud, misrepresentation, concealment and deceit, as explained above, were intentionally and/or negligently done in a reckless manner, in complete criminal disregard of the rights, feelings, health, and finances of Trost, inflicting severe outrageous mental and emotional distress on Trost, which suffering continues to this day, including pain and suffering, stress, anxiety, headaches, and sleepless nights, entitling Trost also to an award of damages including for the aforesaid severe mental and emotional distress, in accordance with her proof at trial.

## COUNT TWO
### Damages for Breach of Fiduciary Duty

38. The relationship between Trost and Brokers was a fiduciary relationship as Brokers were licensed real estate and loan professionals handling Trost's money and properties and had a duty in that trust relationship with Trost as a result and based upon the trust and confidence that Trost, in reliance thereon, had in them, to act in a fair and reasonable manner toward Trost, which relationship was breached by the acts above complained of, as a result of which she suffered and continues to suffer actual damages in an amount to be determined, subject to proof at trial.

39. Said breach of fiduciary duty, as explained above, was done with a wanton, callous, intentional and/or reckless criminal disregard for the rights and feelings and financial and mental health of Trost, as a result of a fraudulent scheme by fiduciaries to steal her money and her property, entitling Trost to an award of

exemplary and punitive damages in an amount of at least ten times her actual damages.

40. Said breach of fiduciary duty, as explained above, was intentionally and/or negligently done in a reckless manner, in complete criminal disregard of the rights, feelings, health, and finances of Trost, inflicting severe outrageous mental and emotional distress on Trost, which suffering continues to this day, including pain and suffering, stress, anxiety, headaches, and sleepless nights, entitling Trost also to an award of damages including for the aforesaid severe mental and emotional distress, in accordance with her proof at trial.

## COUNT THREE
**Damages for Breach of Contract**

41. Trost relied in good faith upon the promises of Brokers aforesaid to represent her best interests in protecting her properties and her money, and Trost fully performed all of her obligations pursuant to the aforesaid listing and commission and sales and investment and loan agreements with Brokers and others, in which she entered into upon the inducement of Brokers, which promises of Brokers were materially breached by them through fraud, misrepresentation, concealment and deceit, as a result of which she suffered and continues to suffer actual damages in an amount to be determined, subject to proof at trial.

42. Said material breach of Brokers' promises, as explained aforesaid, also constituted a breach of the implied covenant of good faith and fair dealing

contained within said listing and commission and sales and investment and loan agreements with Brokers and others, in which Trost entered into upon the inducement of Brokers, as a result of which she suffered and continues to suffer actual damages in an amount to be determined, subject to proof at trial.

## COUNT FOUR
### Damages for the Intentional and/or Negligent Infliction of Emotional Distress

43. Said theft of Trost's money and property, as explained above, was intentionally and/or negligently done in a reckless manner, in complete criminal disregard of the rights, feelings, health, and finances of Trost, inflicting severe outrageous mental and emotional distress on Trost, which suffering continues to this day, including pain and suffering, stress, anxiety, headaches, and sleepless nights, entitling Trost to an award of damages including for the aforesaid severe mental and emotional distress, in accordance with her proof at trial.

## COUNT FIVE
### For an Accounting

44. The wrongful acts and omissions of Brokers, as explained aforesaid, constitute events causing and justifying this District Court to compel Brokers at their sole expense to immediately provide Trost and this Court access to their books and records pertaining to, and a full and complete accounting of said listing and commission and sales and investment and loan agreements with Brokers and others within their possession and/or control; to the extent that this District Court

deems this request a remedy and not a cause of action, it shall be interpreted to be an additional remedy sought in conjunction with Counts One, Two and Three above and hereby considered incorporated within all three of those Counts by this reference.

45. In addition to her entitlement to an Order of this District Court commanding such a full and complete accounting forthwith, Trost is entitled to an award of actual, consequential, and proximate damages against said Brokers, jointly and severally, in an amount to be determined according to proof at trial for all of her past, rightful and unsuccessful efforts to secure such an accounting, including her past attorneys' fees and costs.

## COUNT SIX
### For the Setting Aside of Fraudulent Conveyances

46. Trost is further entitled to an Order of this District Court, to be based upon the evidence adduced in this Case, declaring said Brokers, each and all, to have wrongfully transferred and/or wrongfully accepted transfers of assets and income to which she is entitled pursuant to said listing and commission and sales and investment and loan agreements with Brokers and others, rightfully belonging to Trost, as a result of which Brokers, each and all, and all of those the evidence adduced shows to be in wrongful possession and/or ownership of same, and directing them forthwith to transfer all right, title, and interest as to same to Trost, together with an award of actual, consequential, and proximate damages against

them, jointly and severally, in an amount to be determined according to proof at trial for her efforts required to set aside said transfers and to acquire said assets and income; to the extent that this District Court deems this request a remedy and not a cause of action, it shall be interpreted to be an additional remedy sought in conjunction with Counts One, Two and Three above and hereby considered incorporated within all three of those Counts by this reference.

## COUNT SEVEN
### For the Imposition of Constructive Trusts

47. As a result of the wrongful acts and omissions complained of above, it would be unjust to deny Trost the full benefits of the money and properties to which she is entitled but for said wrongful conduct, such Brokers and all others found to have wrongful possession and/or ownership of Trost's money and properties should be declared by Order of this District Court to be involuntary trustees of separate constructive trusts of all such real and personal property and assets of every kind flowing therefrom since their misappropriation or in any way containing said monies, and to have for Trost's sole benefit equitable liens declared to attach to all such otherwise lost assets and/or lost benefits, as this District Court deems just, so as to prevent Brokers and others subsequently identified from receiving the benefits of any such wrongful possession, ownership, transfer and/or conversion; to the extent that this District Court deems this request a remedy and not a cause of action, it shall be interpreted to be an additional remedy sought in

conjunction with Counts One, Two and Three above and hereby considered incorporated within all three of those Counts by this reference.

## COUNT EIGHT
### For the Disgorgement of Unjust Enrichment

48. As a result of the wrongful acts and omissions complained of above, it would be unjust and would provide windfall profits to Brokers to permit each or all of them to retain the benefits to them of the wrongful conduct inflicted by them upon Trost, such that Brokers should be made by Order of this District Court to pay to Trost and to disgorge to her all of such windfall profits unjustly enriching them; to the extent that this District Court deems this request a remedy and not a cause of action, it shall be interpreted to be an additional remedy sought in conjunction with Counts One, Two and Three above and hereby considered incorporated within all three of those Counts by this reference.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Jennifer Cory Trost prays that she have Judgment against all Defendants, jointly and severally, as this Court may determine to be just, as follows:

A. Count One: Damages for Fraud, Misrepresentation, Concealment and Deceit;

B. Count Two: Damages for Breach of Fiduciary Duty;

C. Count Three: Damages for Breach of Contract;

D. Count Four: Damages for the Intentional and/or Negligent Infliction of Emotional Distress;

E. Count Five: For an Accounting;

F. Count Six: For the Setting Aside of Fraudulent Conveyances;

G. Count Seven: For the Imposition of Constructive Trusts;

H. Count Eight: For the Disgorgement of Unjust Enrichment;

I. For Prejudgment Interest;

J. For Costs of Suit;

K. For Attorneys' Fees;

L. And For Such Other and Further Relief as deemed just and proper by this United States District Court.

DATED: Honolulu, Hawaii; July 25, 2011.

> _____
> GARY VICTOR DUBIN
> FREDERICK J. ARENSMEYER
> PETER T. STONE
> Attorneys for Plaintiff
> Jennifer Cory Trost